IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HAYLEY B.,[1]

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:22-cv-01116-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Hayley B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## BACKGROUND

Born in August 1991, plaintiff alleges disability as of her date of birth[2] due to autism spectrum disorder, asthma, panic attacks, and anxiety. Tr. 190, 214. Her SSI application was denied initially and upon reconsideration. On May 18, 2021, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by a non-attorney representative and testified, as did a vocational expert ("VE"). Tr. 34-58. On July 15, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 13-28. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity "since March 30, 2018, the application date." Tr. 15. At step two, the ALJ determined the following impairments were medically determinable and severe: "obesity, mild degenerative changes at L5-S1; autism spectrum disorder; major depressive disorder with seasonal pattern; [and] anxiety disorder." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 16.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform medium exertion work as defined by 20 C.F.R. § 416.967(c) except:

---

[2] Plaintiff's non-attorney representative attempted to amend the alleged onset date to May 30, 2018, but this change is not reflected in the hearing transcript or ALJ decision. Tr. 203-04. However, because SSI benefits are not available retrospectively, the ALJ correctly evaluated the adjudication period from the application date. Tr. 13; 20 C.F.R. § 416.335.

> she can frequently climb ramps and stairs, she can occasionally climb ropes, ladders, scaffolds; she can frequently balance, stoop, crouch, crawl, kneel; she can occasionally crawl. She can do simple, routine, repetitive tasks with 1-2 steps and a reasoning level of 1-2, but no fast-paced production work; she can have occasional, superficial public contact and occasional contact with coworkers. She should have no concentrated exposure to fumes, gases, dust odors and other pulmonary irritants. She should have no exposure to workplace hazards such as heights and moving machinery.

Tr. 18-19.

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 26. At step five, the ALJ concluded there were a significant number of jobs in the national economy that plaintiff could perform despite her impairments, such as bagger, hospital cleaner, and dining room attendant. Tr. 27.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting her subjective symptom statements; (2) improperly assessing the medical opinions of the state agency consulting sources and Peter LeBray, Ph.D.; and (3) formulating an incomplete RFC.

**I.    Plaintiff's Testimony**

Plaintiff contends the ALJ erred by discrediting her testimony concerning the extent of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the

Page 3 – OPINION AND ORDER

reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified that she was unable to work due to her "anxiety [and the fact that] not everybody wants to hire somebody on the autism spectrum." Tr. 42-43. Regarding her anxiety, plaintiff explained she is "anxious all the time" and "if I get overwhelmed, which happens on a very frequent basis[,] I get very panicked and to the point where it's – where I can't function [and] need to withdraw for quite a while afterwards." Tr. 43, 49-50. Plaintiff stated "five, six times a month . . . I have a serious anxiety attack." Tr. 50. Following one of these attacks, plaintiff needs "[a]t least a couple of hours" to decompress. *Id.* Plaintiff also endorsed back pain that causes "trouble standing for more than a half hour in one position . . . as well as you know, moving and walking without having to stop and rest for a certain amount of time." Tr. 49.

In terms of daily activities, plaintiff indicated that she goes shopping, does laundry, prepares simple meals, reads, goes online, and spends time with her boyfriend and a circle of close

friends; they go shopping at thrift stores or bookstores, out to eat, or for a walk downtown or at the park. Tr. 44-46. When asked by her non-attorney representative how she manages her anxiety when out with friends, plaintiff responded: "when it gets to the point where it becomes a problem, I remove myself from a situation and go off and try to calm down. [This happens] [m]aybe once or twice on an outing." Tr. 51-52.

After recounting her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 20. The ALJ then went on to summarize the medical record and plaintiff's daily activities to conclude that they are "consistent with" or "support" the limitations set forth in the RFC. Tr. 20-23.

The ALJ erred in evaluating plaintiff's subjective symptom testimony. While the "reviewing court [may draw] specific and legitimate inferences from the ALJ's opinion," it is well-established that the ALJ must, at a minimum, identify which testimony is not consistent with the record. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989); SSR 16-3p, *available at* 2016 WL 1119029; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints") (citation and internal quotations omitted); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony"). And "providing a summary of medical evidence is not the same as providing clear and convincing

Page 5 – OPINION AND ORDER

reasons for finding the claimant's symptom testimony not credible." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (citation and internal quotations and ellipses omitted).

Here, plaintiff identified her main barrier to employment as anxiety that results in the need to withdraw from social or work situations and decompress for various lengths of time. Even reading the ALJ's decision broadly, none of the medical findings or daily activities discussed therein touch upon this symptom testimony. *Cf. Lambert*, 980 F.3d at 1277 ("[w]e cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [the claimant's] testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony") (emphasis in original); *see also Holcomb v. Saul*, 832 Fed.Appx. 505, 506 (9th Cir. 2020) ("the ALJ discussed relevant medical evidence but failed to link [the claimant's] symptom testimony to specific medical records and explain why those records contradicted [his] symptom testimony," thereby committing reversible error).

Moreover, the ALJ's treatment of plaintiff's pain testimony is insufficient. Specifically, the ALJ pointed to the objective imaging studies, examination findings that were occasionally normal but otherwise showed tenderness and/or a limited range of motion, and plaintiff's ability to groom herself, "do light cleaning and laundry, and shop for groceries." Tr. 20-23. As such, the ALJ failed to account for the timing of plaintiff's pain complaints or how her activities contradict her hearing statements. That is, the record reflects that plaintiff did not experience any back pain until November 2018, when she "'tweaked' her back [while] cleaning her bathroom." Tr. 422-23, 476. After over-the-counter pain medications and heat were unsuccessful at treating her ongoing back pain, plaintiff underwent physical therapy in February and March 2019, which initially helped to mitigate her symptoms. Tr. 402-14, 418.

However, by April 2019, her pack pain recurred. Tr. 466. Upon exam, plaintiff exhibited tenderness and limited range of motion. Tr. 468. "Due to lack of improvement despite [physical therapy] and time," plaintiff's provider determined "imaging [was] warranted." Tr. 469. Plaintiff's pain complaints persisted and her provider again ordered imaging. Tr. 476-79. By December 2019, her "[b]ack [had] improved somewhat" but pain was nonetheless still present. Tr. 482-83. In April 2021, plaintiff underwent imaging studies, which showed "mild degenerative change with disc space narrowing at L5-S1," "[m]inimal bony spurring at L4," and "mild left convex rotary scoliotic curvature." Tr. 627-28; see also Ellefson v. Colvin, 2016 WL 3769359, *6 n.5 (D. Or. July 14, 2016) ("mild degenerative changes do not necessarily equate to mild functional limitations").

In sum, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements.

## II.  Medical Opinion Evidence

Plaintiff next asserts the ALJ improperly discredited the state agency consulting source opinions, which relied, in part, on Dr. LeBray's June 2013 assessment.[3] Where, as here, the

---

[3] To the extent plaintiff challenges the ALJ's rejection of Dr. LeBray's opinion, the Court finds no error. The ALJ found this evidence unpersuasive because, among other reasons, it substantially predated the alleged onset date and is "inconsistent with the complete medical record." Tr. 24-25. Indeed, Dr. LeBray rendered his opinion approximately five years before plaintiff's most recent application for disability benefits, and she had two prior SSI denials in 2013 and 2014. Tr. 64, 311; see also Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir.2008) (ALJ need not accept medical reports that predate the onset of disability); Kevin M. v. Comm'r, Soc. Sec. Admin., 2022 WL 17690153, *3 (D. Or. Dec. 15, 2022) ("[a] prior disability claim is not deemed to have been reconsidered on the merits merely because the evidence reviewed by the ALJ included evidence of the claimant's condition at the time of the previous application"). The fact that Dr. LeBray's opinion informed the state agency consulting sources' opinions does not alter the Court's analysis. See Vanderslice v. Berryhill, 2017 WL 2889371, *3 (W.D. Wash. July 6, 2017) (affirming the ALJ's rejections of medical opinions because they were given "two years before the relevant period," and explaining that "[c]onsistency, alone, does not require the ALJ to accept an opinion . . . [otherwise] the ALJ would be required to credit [any medical] opinion . . . simply because it was similar to another doctor's opinion").

plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[4] *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

The state agency mental health consulting sources – i.e., Winifred Ju, Ph.D., and Sergiy Barsukov, Psy.D. – reviewed the record in August 2018 and April 2019, respectively. At that time, plaintiff was not obtaining any counseling and had not undergone any mental health assessments since Dr. LeBray's 2013 evaluation.[5] Drs. Ju and Barsukov opined that plaintiff was "moderately limited" in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers without distracting them or exhibiting behavioral extremes; respond appropriately to

---

[4] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The new regulations nonetheless "displace our longstanding case law requiring an ALJ to provide" different levels of reasoning (i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Id.* at 787.

[5] Plaintiff ceased services with her longstanding mental health provider prior to the alleged onset date and did not resume counseling services until November 2019. Tr. 425-26, 482, 490-96, 620.

Page 8 – OPINION AND ORDER

changes in the work setting; and set realistic goals or make plans independently of others. Tr. 70-72, 87-88. To account for these moderate limitations, Drs. Ju and Barsukov articulated the following restrictions:

> [Plaintiff] is capable of understanding /remembering simple (1-2 step) work-like procedures, as well as more complex work-like procedures in areas of interest[;] maintaining [concentration, persistence, or pace] for simple (1-2 step) tasks as well as for more complex work-like procedures in areas of interest. Psychologically based [symptoms] would not appear to excessively disrupt work pace or ability to complete typical work periods . . . [Plaintiff] is capable of occasional structured interactions [with] the general public and coworkers. She is capable of normative supervisor interactions but is most responsive to an understanding supervisor . . . [Plaintiff] performs best in jobs [with] no fast-paced, detailed perceptual discrimination tasks (such as high demand assembly line work). She is most responsive to direct, on-the-job training from a supportive trainer.

*Id.*

The ALJ determined the opinions of Drs. Ju and Barsukov were generally "well supported by a review of the record" and "consistent [with] the claimant's ability to shop, visit stores, the park, and theaters with friends, take public transit, and objective examinations, including her historic intellectual testing." Tr. 24. However, "[t]he notes that the claimant would be most responsive to an understanding supervisor and direct on-the-job training from a supportive supervisor and would be able to complete more complex work-like procedures in areas of interest are not well supported with explanation of what impact the absence or presence of these supervisors would have on her functioning, or what areas of interest include." *Id.* Additionally, the ALJ denoted "[t]he additional supervisor limitations and limitation to structured interactions are not consistent with the claimant's often normal mood and affect, speech, cooperation, and eye contact with intact judgement." *Id.* (internal citations omitted).

The Court finds that the ALJ's decision as to this issue was based on the proper legal standards and is supported by substantial evidence. An ALJ need not accept a medical opinion that

Page 9 – OPINION AND ORDER

does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Relatedly, an ALJ is "not required to incorporate limitations phrased equivocally into the RFC." *Collum v. Colvin*, 2014 WL 3778312, *4 (D. Or. July 30, 2014) (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009)); *see also Griffith v. Colvin*, 2014 WL 1303102, *5 n.3 (D. Or. Mar. 30, 2014) ("Dr. Carrello's statements that Ms. Griffith may have difficulty completing work without interference from her mental impairments or performing work activities on a consistent basis without additional instructions do not represent work-related limitations of function that need to be reflected in the RFC") (citations and internal quotations and brackets omitted).

Significantly, both Drs. Ju and Barsukov opined that plaintiff "is capable of normative supervisor interactions" and her mental impairments "would not . . . excessively disrupt work pace or ability to complete typical work periods." Tr. 70-72, 87-88. Consistent with their opinions, the record reflects that plaintiff worked for one year between 2017 and 2018 at close to substantial gainful levels. Tr. 200, 215, 222. Although she was ultimately terminated due to her inability to meet production pace requirements, there is no indication in the record before the Court that she experienced special supervisory needs (except for the occasional need to have instructions repeated) or problems interacting with others while employed or volunteering. *See, e.g.*, Tr. 42, 47-48, 222, 226-28, 244. Further, as recently as February 2019, plaintiff was "still looking for a new job" and "not currently seeing counselor and doing ok without that"; as recently as December 2019, plaintiff continued to engage in volunteering activities. Tr. 415, 482.

Therefore, aside from the fact that Drs. Ju and Barsukov's relevant supervisory statement – i.e., that plaintiff would be "most responsive to an understanding supervisor [that provides]

Page 10 – OPINION AND ORDER

direct, on-the-job training" – does not represent a work-related limitation of function that need be reflected in the RFC, it is also at odds with plaintiff's employment, volunteer, and treatment history. The ALJ's decision is affirmed as to this issue.

## III.    RFC and Remedy

Finally, plaintiff argues that the ALJ's RFC is deficient because it fails to account for the medical opinion evidence and her subjective symptom statements. As addressed herein, plaintiff is correct as to the latter and case law dictates that such an error was harmful. *See Nguyen v. Chater, 100 F.3d 1462, 1466 n.3 (9th Cir .1996)* (VE's response to an incomplete hypothetical has "no evidentiary value") (citations and internal quotations omitted).

The question thus becomes the proper legal remedy. The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). Nevertheless, a remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

In this case, plaintiff does not pursue the immediate payment of benefits. *See* Pl.'s Opening Br. 13 (doc. 16) ("[p]laintiff avers that remand for additional evidence and findings . . . is the appropriate remedy"). The Court agrees and finds that there are ambiguities in the record that support the need for further proceedings.

Page 11 – OPINION AND ORDER

On one hand, it is undisputed that plaintiff's mental health impairments are longstanding, and have persisted despite early intervention and years of counseling. On the other hand, plaintiff worked for a year at near substantial gainful levels despite her impairments and engaged in a wide slate of social activities outside the home. Further, plaintiff did not begin reporting back pain until after the alleged onset date, nor did she obtain counseling for much of the adjudication period. While she did resume bi-weekly counseling sessions in November 2019, the record contains only two treatment notes. Tr. 482, 613-19. Additionally, plaintiff has not undergone any psychological testing or assessment since well before the alleged onset date, such that there is no indication of her current functioning from a medical standpoint.

Accordingly, further proceedings are required to resolve this case. *See Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Given the ambiguity surrounding any potential disability onset date, coupled with the complex and longstanding nature of plaintiff's mental health conditions, referral to a consultative examination or the use of a medical expert specializing in psychology would be helpful. Additional efforts should also be made to obtain plaintiff's mental health counseling and treatment records from her current provider, Cyncha Dato. Therefore, upon remand, the ALJ must seek out additional records and a consultative exam or medical expert and, if necessary, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 19th day of April, 2023.

                                    /s/ Jolie A. Russo
                                    Jolie A. Russo
                          United States Magistrate Judge